```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
DONNA ANN GABRIELE CHECHELE,              :    11 Civ. 2191 (KBF)
                                          :
                           Plaintiff,     :    MEMORANDUM OPINION &
                                          :         ORDER
            -v-                           :
                                          :
VICIS CAPITAL, LLC; VICIS CAPITAL         :
MASTER FUND; and ELORIAN CONNARD          :
LANDERS,                                  :
                                          :
                           Defendants,    :
                                          :
            - and      -                  :
                                          :
BOND LABORATORIES, INC.,                  :
                                          :
                  Nominal Defendant.      :
------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 3 1 2012

KATHERINE B. FORREST, District Judge:

On March 30, 2011, plaintiff Donna Ann Gabriele Chechele brought this action against defendants Vicis Capital, LLC, Vicis Capital Master Fund (the "Vicis defendants" or "Vicis"), Elorian Connard Landers ("Landers") and Bond Laboratories, Inc. ("Bond").[1] Plaintiff alleges violations Section 16(b) of the

---

[1] This action is one of 12 filed by plaintiff in the past year in this and other courts. See Chechele v. Morgan Stanley et al, No. 11 Civ. 4037 (S.D.N.Y. June 14, 2011); Chechele v. Prolor Biotech, Inc., 11 Civ. 3425 (S.D.N.Y. May 19, 2011); Chechele v. Elsztain et al., 11 Civ. 3320 (S.D.N.Y. May 16, 2011); Chechele v. Ganning et al., No. 11 Civ. 2853 (S.D.N.Y. Apr. 27, 2011); Chechele v. Phoenix Venture Fund LLC et al., No. 11 Civ. 2729 (S.D.N.Y. Apr. 21, 2011); Chechele v. Dialectic Capital Mgmt., LLC et al., 11 Civ. 1913 (S.D.N.Y. Mar. 18, 2011); Chechele v. Sperling et al., 11 Civ. 146 (S.D.N.Y. Jan. 7, 2011); Chechele v. Scheetz et al., 10 Civ. 7992 (S.D.N.Y. Oct. 20, 2010); Chechele v. Joffe et al., 10 Civ. 6747 (S.D.N.Y. Sept. 10, 2010); see also Chechele v. Hayne et al., 11 Civ. 379 (E.D. Pa. Jan. 21, 2011); Chechele v. Ward, 10 Civ. 1286 (W.D. Okla. Dec. 1, 2010).

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b), against the Vicis defendants (Count I), Landers alone (Count II), and Vicis and Landers collectively (Count III).[2]

On July 11, 2011, the Vicis defendants moved to dismiss Counts I and III, arguing that (i) they did not profit as a result of exchanging the security at issue--a warrant; (ii) they were not the "beneficial owner," as defined by the statute, of any share underlying the warrant; and (iii) the subject transaction is exempt from Section 16(b) pursuant to the Supreme Court's decision in Kern Co. Land Co. v. Occidental Petroleum Corp., 411 U.S. 582 (1973), and its progeny. See generally Mem. In Support of Mot. to Dismiss ("Defs. Mem.") (Dkt. No. 14). Plaintiff opposed the motion on December 2, 2011. See Mem. of Law In Opp'n to the Mot. to Dismiss (Dkt. No. 24). Vicis replied on December 16, 2011. See Reply In Support of Mot. to Dismiss (Dkt. No. 27).

For the reasons set forth below, the Court dismisses the complaint as against Vicis without prejudice.[3]

---

[2] Both Landers and nominal defendant Bond answered the complaint on October 10, 2011. Dkt. No. 21.

[3] Although Vicis only raises the issue upon which this Court decides the motion--i.e., that the 1.8 million shares acquired in the April 20 and August 4, 2009 transactions are disparate from the 1.8 million shares underlying the warrant--in a footnote, see Defs. Mem. at 2 n.4, the Court gives plaintiff thirty days in which to cure the pleading deficiencies identified in this Memorandum & Order.

FACTUAL BACKGROUND

For purposes of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor. See Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001). The Court also considers the documents publicly filed with the Securities and Exchange Commission ("SEC") as well as documents referenced in the complaint and/or incorporated by reference therein. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).

Plaintiff alleges that the Vicis defendants made two purchases of Bond's common stock--(i) 600,000 shares on April 20, 2009; and (ii) 1,200,000 additional shares on August 4, 2009--for a total of 1.8 million shares. Compl. (Dkt. No. 1) ¶¶ 14-15. Vicis paid 17 cents per share for each of those 1.8 million. Id. ¶¶ 14-15; see also id. ¶ 18.

Prior to those acquisitions, on June 26, 2008, Vicis acquired a warrant pursuant to which it could exercise the warrant for up to 1.8 million shares of Bond common stock. See Certification of Thomas E. Chase ("Chase Cert.") (Dkt. 15) Ex. B. According to plaintiff, on August 13, 2009, the Vicis defendants and Bond entered into an exchange agreement pursuant to which Vicis surrendered to Bond a warrant to purchase 1.8

3

million of Bond's common stock in exchange for 900,000 shares of Bond's common stock. Id. ¶ 16.[4]

Plaintiff contends that Vicis' disposition of the warrant (i.e., the exchange) "was equivalent" to the "sale" of an "aggregate" of 1.8 million shares of Bond's common stock at a price of 40 cents per share (not 17 cents)--i.e., the "contemporaneous market price" for Bond's common stock on the open market as of August 13, 2009. Compl. ¶ 17. In other words, according to plaintiff, the April 20 and August 4, 2009 transactions were "purchases" of 1.8 million shares of Bond common stock that can be matched with the August 13, 2009, exchange of the warrant as a "sale" of that common stock. Id. ¶ 17. Using the "lowest-in, highest-out" method for computing "realized profits," plaintiff seeks to have Vicis disgorge "recoverable profits" totaling $414,000 using the 40 cent per share price. Id. ¶ 24.

DISCUSSION

I. STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to

---

[4] Paragraph 16 of the Complaint alleges that the warrant was exchanged for 9 million shares. Compl. ¶ 16. Based upon the terms of the warrant itself, which is incorporated by reference in the complaint, as well as other SEC filings, it is clear that the warrant was exchanged for 900,000 shares of common stock. See ATSI Commc'ns, Inc., 493 F.3d at 98.

4

relief above the speculative level.'" ATSI Commc'ns, Inc., 493 F.3d at 98 (quoting Bell Alt. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (quoting Twombly, 550 U.S. at 570). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the factual averments, dismissal is appropriate. Starr, 592 F.3d at 321 (quoting Iqbal, 129 S.Ct. at 1950).

II. COUNT I

Section 16(b) addresses certain short-swing transactions. It

> provides that officers, directors, and holders of more
> than 10% of the listed stock of any company shall be
> liable to the company for any profits realized from
> the purchase and sale, or sale and purchase, of such
> stock occurring within a period of six months.

Kern, 411 U.S. at 583; see also 15 U.S.C. § 78p(b). The statute was enacted to prevent the unfair use of inside information, Kern, 411 U.S. at 591; Huppe v. WPCS Int'l Inc., --- F.3d ---, 2012 WL 164072, at *3 (2d Cir. Jan. 20, 2012) (quoting Kern), and thus, is a strict liability statute, Huppe, 2012 WL 164072, at *1. That definitive liability eliminates the need for pleading as to the defendant's state of mind. See id. at *3. To survive a motion to dismiss, plaintiff's burden is not high: allegations of a matched purchase and sale of a security, combined with assertions of realized profit and sufficient beneficial ownership are generally enough to allow a case to proceed. Levy, 263 F.3d at 14. Specifically, to state a claim under Section 16(b), a plaintiff must allege (a) a purchase of a security, (b) a matching or corresponding sale, and (c) that such purchase and sale was by a shareholder of more than 10 percent of any one class of the issuer's securities. Id.[5]

Upon reviewing the relevant SEC filings and other documents incorporated by reference into the complaint, it is clear that the complaint fails to allege adequately the first two elements of a Section 16(b) claims--a purchase and matching sale. There are several facts contained in the SEC filings that demonstrate

---

[5] In 1991, Congress amended Section 16(b) to make clear that certain types of securities, including warrants (i.e., the derivative instrument at issue here), came within the statute's prohibitions. See Segen v. Westcliff Capital Mgmt., LLC, 299 F. Supp. 2d 262, 268 (S.D.N.Y. 2004).

6

the facial implausibility of plaintiff's claims on the facts alleged. See Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 556. At bottom, the complaint demonstrates plaintiff's fundamental misunderstanding of the nature of the warrant that plays a central role in the claims asserted here.

On August 31, 2009, Vicis filed with the SEC a Form 4, Statement of Changes in Beneficial Ownership of Securities (the "Form 4"), in which it listed the April 20 and August 4, 2009 purchases of the 1.8 million shares, and the total amount of shares owned as of August 4, 2009. See Chase Cert. Ex. G at 1. Vicis identified the total shares owned as of August 4, 2009, as 15,326,237. Id. The total is crucial because as of August 13, 2009, Vicis identified the total shares of Bond common stock owned as 16,226,237. Id. at 1. Comparing those two totals shows that the 900,000 shares purportedly "purchased" by Vicis on August 13, 2009, were additive to the total, id. at 2 n.7, making clear that Vicis did not sell the 1.8 million shares it had acquired in the April 20 and August 4, 2009 transactions. Because the 1.8 million shares were not "sold" in the August 13, 2009 transaction, the exchange agreement for the warrant does not amount to a matching sale of the April 20 and August 4, 2009 purchases. See Levy, 263 F.3d at 14. Indeed, the SEC filings indicate that Vicis did not sell any of its shares of Bond's common stock.

The missing link in plaintiff's Section 16(b) claims is the failure to account for Vicis' acquisition of the warrant. For purposes of Section 16(b), there is no doubt that warrants are considered securities, and the acquisition of a warrant can be considered a purchase of a security. See Roberts v. Eaton, 212 F.2d 82 (2d Cir. 1954). The face of the warrant indicates that it was acquired "FOR VALUE RECEIVED," on June 26, 2008. Chase Cert. Ex. B. That was also the date of its "purchase." The face of the warrant indicates that Vicis may exercise the warrant for up to 1.8 million shares. Id. According to the Form 4, the warrant was exercised on August 13, 2009, resulting in the simultaneous surrender of a derivative instrument (i.e., the warrant) equating with 1.8 million shares, in exchange for 900,000 additional shares of common stock. Chase Cert. Ex. G.[6]

The complaint entirely skips over the warrant and matches the April 20 and August 4 purchases against the August 13 acquisition of the 900,000 shares. In other words, the complaint does not account for the acquisition of the warrant as a separate purchase of a security. It is, however, that acquisition and the subsequent exercise of the warrant that

---

[6] Bond's Form 8-K, filed on August 13, 2009, explains that the warrant exchange related to an amendment of a certificate of designation for Series B shares: "In connection with the amendment of Series B Certificate of Designation, Vicis entered into an Exchange Agreement, with the Company, whereby it exchanged the 1,800,000 common stock purchase warrants held for 900,000 shares of unregistered Common Stock." Chase Cert. Ex. A.

8

results in Vicis' obtaining the 900,000 shares. But nowhere does the complaint allege as much.

Therefore, the complaint does not allege adequately the purchase and matching sale for purposes of Section 16(b). See Levy, 263 F.3d at 14. For that reason, this Court need not consider the Vicis defendants' arguments regarding whether Vicis realized a profit, whether Vicis is or was a beneficial ownership and the Kern decision.[7] Count I is dismissed without prejudice.

III. COUNT III

Count III, a "precaution against possible errors of detail," Compl. ¶ 34, generally alleges that certain purchases and sales of Bond's equity violate Section 16(b), but "cannot be identified by Plaintiff with specificity because they have not been publicly reported, and Defendants have failed or refused to disclose these trades (or the absence thereof) upon inquiry from plaintiff's counsel," id. ¶ 35. Such a claim fails the most basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure as well as the requirements promulgated by the Supreme Court in Twombly and Iqbal. The Court will not allow

---

[7] Should plaintiff choose to amend the complaint against the Vicis defendants, she should carefully consider the arguments raised by the Vicis defendants' motion to dismiss. If the Vicis defendants move to dismiss a new complaint on any of the same bases raised here and the Court finds those arguments meritorious, the Court will consider the plaintiff to already have had an opportunity to address them in an amended pleading.

that count to proceed unless plaintiff is able to allege a plausible basis for relief. See DiPetto v. U.S. Postal Service, 383 Fed. Appx. 102, 103 (2d Cir. 2010) (recognizing that district courts may dismiss a complaint sua sponte where the complaint is "confused, vague, or otherwise unintelligible").[8]

## CONCLUSION

For the aforementioned reasons, the Court finds that plaintiff has failed to allege adequately a plausible Section 16(b) claim in Counts I and III of the complaint against Vicis. Accordingly, Counts I and III of the complaint are dismissed without prejudice.

Plaintiff may amend its complaint as to the Vicis defendants by March 1, 2012.

If plaintiff chooses to file an amended complaint, the Vicis defendants may move to dismiss that complaint by March 21, 2012, with plaintiff's opposition thereto due by April 5, 2012, and Vicis' reply by April 12, 2012.

---

[8] To the extent that plaintiff alleges that Vicis and Landers have failed to disclose sufficient information to assert such a claim, plaintiff will not suffer any prejudice from dismissal of Count III as the statute of limitations begins to run on a Section 16(b) claim when the plaintiff has "inquiry notice," see Litzler v. CC Invs., L.D.C., 362 F.3d 203, 207 (2d Cir. 2004)--i.e., "when a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation," Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 174 (2d Cir. 2011).

The Clerk of Court is directed to terminate the Vicis defendants' motion to dismiss (Dkt. No. 13).

SO ORDERED:

Dated: New York, New York
       January 31, 2012

                                                KATHERINE B. FORREST
                                             United States District Judge